### In re THERAGENICS CORP. SECURITIES LITIGATION.

No. CIV.A.1:99–CV–141–TWT.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 5, 2002.

**632**

Martin D. Chitwood, Chitwood & Harley, Atlanta, GA, Steven G. Schulman, phv, Salvatore J. Graziano, phv, Samuel H. Rudman, phv, Keith M. Fleischman, phv, Milberg Weiss Bershad Hynes & Lerach, New York City, Jeffrey R. Krinsk, phv, Finkelstein & Krinsk, San Diego, CA, M. Richard Komins, phv, Barrack Rodos & Bacine, Philadelphia, PA, Leonard Barrack, phv, Barrack Rodos & Bacine, Philadelphia, PA, Zachary Alan Starr, phv, Starr & Holman, New York City, Fred Taylor Isquith, phv, Shane T. Rowley, phv, Wolf Haldenstein Adler, New York City, Robert I. Harwood, phv, Frederick W. Gerkens, phv, Wechsler Harwood Halebian & Feffer, New York City, Marc H. Edelson, phv, Hoffman & Edelson, Doylestown, PA, Joshua N. Rubin, phv, Abbey Gardy, New York City, Paul J. Scarlato, phv, Robert S. Kitchenoff Scarlato & Goldman, Philadelphia, PA, Bruce G. Murphy, phv, Law Offices of Bruce G. Murphy, Vero Beach, FL, Jonathan M. Plasse, phv, Goodkind Labaton Rudoff & Sucharow, New York City, Jeffrey L. Kodroff, phv, Spector Roseman & Kodroff, Philadelphia, PA, Dennis J. Johnson, phv, Jacob B. Perkinson, phv, Law Offices of Dennis J. Johnson, South Burlington, VT, Kevin J. Yourman, phv, Jordan L. Lurie, phv, Weiss & Yourman, Los Angeles, CA, Michael D. Braun, phv, Stull Stull & Brody, Los Angeles, CA, Jacqueline Sailer, phv, Brian P. Murray, phv, Rabin & Peckel, New York City, for Plaintiffs.

Michael R. Smith, Martin Robert Thornton, Letitia A. McDonald, Dan Shamus McDevitt, John Patterson Brumbaugh, King & Spalding, Atlanta, GA, for Defendants.

### ORDER

THRASH, District Judge.

This is a securities fraud action. It is before the Court on Defendants' Motion to Compel Plaintiffs to Answer Interrogatories [Doc. 49]. For the reasons set forth below the Court grants the Defendants' Motion to Compel.

### I. BACKGROUND

Plaintiffs allege in their Second Amended Complaint that Defendants defrauded the investing public by touting the success of Theragenics' product TheraSeed® without disclosing circumstances that would adversely affect future demand for the product. This Court dismissed Plaintiffs' initial consolidated complaint, holding that Plaintiffs failed to allege sufficient facts upon which their information and belief allegations were based. The Plaintiffs were given permission to file an amended complaint. On October 6, 2000, Defendants filed a Motion to Dismiss Plaintiffs' Second Amended Complaint ("SAC"), arguing that the amendments Plaintiffs made to their original amended pleading still failed to satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("Reform Act"), 15 U.S.C.A. § 78u-4 (West 1997). This Court in its March 30, 2001 Order denied Defendants' motion, holding, with respect to Plaintiffs' "information and belief" allegations, that the Reform Act's "all facts" requirement "does not require that plaintiffs plead with particularity every single fact upon which their beliefs concerning false or misleading statements are based. Rather, plaintiffs need only plead with particularity sufficient facts to support those beliefs." However, this Court added that the "all facts" requirement "gets a commitment from the plaintiffs as to the sources of their information and belief

that can be tested at the summary judgement stage of the litigation." The Court also indicated that "[t]he additional information may be obtained through discovery, but is not required to be included in the Complaint."

On August 6, 2001, Defendants served their First Interrogatories on Plaintiffs, requesting the names of the individuals upon whom Plaintiffs relied in making the allegations in the SAC. (Motion to Compel Plaintiffs to Answer Interrogatories, Ex. 1). Plaintiffs objected and refused to name anyone with knowledge of the facts underlying their claims, despite having specifically alleged the existence of such persons. (*See* Lead Plaintiff Robert L. Thomas, Jr.'s Objections and Responses to Defendants' First interrogatories to Plaintiffs, Response to Interrogatory Nos. 2, 3, 5, and 13 (Motion, Ex. 2)). On October 15, 2001, Defendants' counsel conferred by telephone with Plaintiffs' counsel to address Plaintiffs' objections to Defendants' Interrogatories. After the telephone conference, Plaintiffs by letter provided the names of fifty-four Amersham and Indigo employees whom Plaintiffs contend have knowledge of the facts underlying Plaintiffs' claims. (*See* Letters from Salvatore J. Graziano to M. Robert Thornton, dated October 16 and October 17, 2001 (Motion Exs. 3 and 4)). This information was responsive to Defendants' Interrogatory No. 13, which requested the names, addresses, and phone numbers of persons other than Theragenics employees whom Plaintiffs believe have knowledge of the facts and circumstances of Plaintiffs' claims.

Defendants' Interrogatory No. 2 called upon the Plaintiffs to "[i]dentify all former employees of Indigo Medical, Inc. and Amersham with whom you or your representatives communicated, as alleged in the preamble paragraph of the Second Amended Complaint, in investigating the allegations of Plaintiffs' initial complaints, First Amended Complaint, or Second Amended Complaint." Plaintiffs, however, refused to identify the persons interviewed as alleged in the SAC

and as requested in Interrogatory No. 2. (Motion Ex. 3). Plaintiffs also refused to respond to Defendants' request in Interrogatory No. 3 which called upon Plaintiffs to "[i]dentify all medical doctors who 'were more comfortable using Iodine 125 to treat cancer' as you allege in paragraph 20 of the Second Amended Complaint." Finally, Plaintiffs refused to answer Interrogatory No. 5 which called upon Plaintiffs to "[i]dentify the 'senior supplier management employee' at Indigo who provided information concerning what was 'common knowledge' at Indigo as alleged in paragraph 25 of the Second Amended Complaint." In this motion, Defendants request that the Court intervene and order Plaintiffs to respond to Interrogatories No. 2, 3, and 5 as written.

## II.  DISCUSSION

### A.  Work Product Doctrine

The principles underlying the work product doctrine and Rule 26(b)(3) of the Federal Rules of Civil Procedure were set forth by the Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).[1] There, the Supreme Court recognized that "not even the most liberal discovery theories can justify unwarranted inquiries into files and mental impressions of an attorney." *Hickman v. Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The Court, in disallowing discovery of witness statements or notes of interviews conducted by counsel, set forth the underlying purpose of protecting an attorney's trial preparation materials, stating that "it is essential that a lawyer work with a certain degree of privacy" and that proper preparation of a client's case demands that he assemble information, decide what he considers to be relevant, prepare his legal theories and plan his strategy without needless interference. *Id.* at 511, 67 S.Ct. 385. In *Hickman,* the Supreme Court also made clear that the work product doctrine does not protect against the discovery of relevant non-privileged facts, whether or not they are contained in protected docu-

---

1.  For the historical background of the case and Rule 26(b)(3), see *Wright, Miller & Marcus, Federal Practice and Procedure: Civil* 2d §§ 2021–23.

ments or were learned by an attorney. *Id.* at 501, 507, 67 S.Ct. 385.

■ The work product doctrine was partially codified in 1970 in Rule 26(b)(3) of the Federal Rules of Civil Procedure. The Rule explicitly protects from discovery documents and things prepared by a party or his representative in anticipation of litigation or in preparation for trial. Production of those documents can be compelled only where the seeking party demonstrates a "substantial need" for the materials and an inability to obtain the substantial equivalent of the desired information by other means. Rule 23(b)(3) contemplates, however, that even when a party can justify the production of work product documents, the court must protect against the disclosure of the opinions, mental processes and legal theories of an attorney.

### B. *Interrogatory Nos. 2 and 5*

■ Numerous courts since *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451(1947), have recognized that names and addresses of witnesses interviewed by counsel who have knowledge of the facts alleged in the complaint are not protected from disclosure by the work product doctrine. Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2023 (Before and after the amendment to Rule 26, "the courts consistently held that the work product concept furnished no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he or she had learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery."). Recently, in *In re Aetna Inc., Sec. Litig.*, 1999 WL 354527 (E.D.Pa.1999), the district court in a securities fraud case held that the names and addresses of individuals interviewed by Plaintiffs' counsel are not protected by the attorney work product doctrine because, at most, such information has minimal work product content. *In re Aetna*, 1999 WL 354527 at *2. In *Aetna*, the defendants' interrogatory read "[f]or each of the paragraphs of the Complaint set forth below, state the

name and address of any supporting witness who was the basis for the allegation in each paragraph." The plaintiffs provided a list of 750 names of individuals with knowledge pertaining to the allegations in the specific paragraphs. The court found that the defendants were merely seeking the disclosure of a "specific subcategory of all potential fact witnesses: those that are described in the Plaintiffs' Second Amended Complaint." *Aetna*, 1999 WL 354527, at *3.

> The fact that those individuals described in the Second Amended Complaint were interviewed by Plaintiffs' counsel during its investigation in anticipation of litigation does not change the Court's conclusion. The Supreme Court in *Hickman v. Taylor* made clear that the work product doctrine protects against the disclosure of an attorney's mental processes and legal opinions; the critical question is the extent to which the information discloses an attorney's thought processes. The disclosure of the names and addresses of those individuals interviewed by Plaintiffs' counsel will not reveal the "mental impressions, conclusions, opinions, or legal theories of [Plaintiffs'] attorneys."

*Id.* The defendants' motion to compel was granted.

In reaching its conclusion, the court in *Aetna* looked to the Third Circuit's decision in *United States v. Amerada Hess Corp.*, 619 F.2d 980 (3d Cir.1980). In *Amerada*, the court held that a list of persons interviewed by Amerada's outside counsel as part of an Amerada internal investigation constituted work product because it had been compiled by outside counsel. However, because its work product content was minimal the court decided that the list should be produced. The court reasoned that the application of the rule

> depends upon the nature of the document, the extent to which it may directly or indirectly reveal the attorney's mental processes, the likely reliability of its reflection of witness' statements, the degree of danger that it will convert the attorney from advocate to witness, and the degree of availability of the information from other sources.

*Amerada,* 619 F.2d at 987–88. The court stressed that production of the list would not jeopardize any of the policy reasons behind the protection of work product. *Amerada,* 619 F.2d at 988.

Other courts have reached similar conclusions. The District Court for the Northern District of Illinois in *American Floral Servs., Inc. v. Florists' Transworld Delivery Ass'n,* 107 F.R.D. 258, 260–261 (N.D.Ill.1985), ordered the identification of witnesses interviewed by the plaintiff. The facts of that case are also similar to those of the instant case. The plaintiff in *American Floral* identified over 200 witnesses having knowledge of the defendant's procedures, but refused to identify specifically the two employees having inculpatory information. The court held that the identity of employees having knowledge of relevant facts was discoverable information despite the work product doctrine. *American Floral,* 107 F.R.D. at 262. Even though the two employees were included in the list of 200, the court found that the defendants ability to distill a 200 person list into the two names of persons with inculpatory information is "time-consuming, wasteful and expensive" and that process shouldn't be forced on the defendants just because the alternative of disclosure makes the job easier for the defendants at the plaintiffs' expense. *American Floral,* 107 F.R.D. at 261. Further, the court stressed that as a result of a policy judgement made by the Rules' draftsmen, every disclosure in the course of discovery makes the other side's job easier. *Id.* Finally, the court stated that the identification of persons who know facts bearing on the claim tells the defendants nothing new about the mental processes of the plaintiff's lawyers, leaving the policy behind the work product doctrine intact. *Id.*

These conclusions are consistent with the Eleventh Circuit case of *Castle v. Sangamo Weston, Inc.,* 744 F.2d 1464 (11th Cir.1984). In *Castle,* the issue was whether "substantial need" and "undue hardship" justified the compelled production of attorneys' witness statements and interview notes in an employment discrimination case. The Court of Appeals held that the defendant had not made the required showing. *Id.* at 1467. The court, however, went on to say that "[i]n particular, we note that appellee had failed to take even the fundamental first step in discovery of requesting the names and addresses of the witnesses the appellants had interviewed. The law is clear that such information is subject to discovery." *Id.* Although this statement is dicta, there is no reason to disregard the Eleventh Circuit's guidance in this matter when the court accurately describes the state of the law in this area. *See* Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2023. The burden is upon the Plaintiffs to provide compelling reasons of public policy or manifest injustice for the Court to depart from a road map laid out by a panel of the Eleventh Circuit, even if dicta.

The Plaintiffs assert that the identity of persons contacted and interviewed by attorneys in anticipation of litigation is core work product. They cite several cases that seem to agree with their assertion. However, this Court feels that these cases are distinguishable from the instant case. Plaintiffs look to the Northern District of California for guidance in *In re Gupta Corp. Sec. Litig.,* No. C–94–1517–FMS, 1995 U.S. Dist. LEXIS 21847 (N.D.Cal. July 14, 1995). That court imposed sanctions on defendants for pursuing responses to interrogatories that asked for the identity of each person contacted by plaintiffs' counsel, finding that such interrogatories were well beyond an appropriate request for the identity of persons with knowledge. *In re Gupta,* 1995 U.S. Dist. LEXIS 21847, at *3. However, in that case, the court appeared chiefly concerned with the defendants' inquiry into the substance of plaintiff's counsel's interviews, not just the identity of the interviewees. *Id.* at *2.

The Plaintiffs also look to a prior decision by Judge O'Kelley of this District for support. In *Seebeck v. General Motors Corp.,* Nos. 1:96–CV–449–452–WCO, 1996 WL 742914, 1996 U.S. Dist. LEXIS 22629 (N.D.Ga. May 17, 1996), the plaintiffs in a products liability action against General Motors sought documents and information relating to an internal corporate investigation conducted by outside counsel into allegations made by a former employee about an alleged defect in a GM vehicle. GM objected to

disclosing any documents or information relating to outside counsel's investigation. The court held that disclosure of the identities of persons interviewed by outside counsel "would provide plaintiff a window into [outside counsel's] thought process during his execution of the task for which he was retained by GM" and, therefore, constituted attorney work product. In the instant case, in contrast, Plaintiffs have made no showing that discovery of the names of the persons referenced in the SAC would provide any insight into Plaintiffs' counsel's litigation strategy. Moreover, Plaintiffs have already revealed through their allegations what information was provided by the witnesses whose identity Defendants seek in this motion. In *Seebeck*, on the other hand, outside counsel's investigation was intended to be and did remain confidential.

Furthermore, the disclosure of names and addresses of persons interviewed by Plaintiffs' counsel is consistent with the policy considerations underlying the Reform Act. The Reform Act was passed in an effort to curtail the filing of so-called strike suits. *In re Aetna*, 1999 WL 354527 at *4. Congress imposed more stringent pleading requirements on plaintiffs in securities fraud cases. One such requirement imposed upon plaintiffs the burden of identifying the sources for allegations pled on information and belief. 15 U.S.C.A. § 78u–4(b)(1). Disclosing the names of those interviewed by the Plaintiff reinforces this policy. However, it must be stressed that the Reform Act has not expressly or impliedly changed the rules governing work product. Discovery in a post-Reform Act securities fraud class action is still evaluated under the Federal Rules of Civil Procedure applicable to all civil cases. *Stanley v. Safeskin Corp.*, slip op., Civil No. 99–CV–0454–BTM (LSP) (S.D.Cal. Apr. 12, 2001).

The disclosure sought here will provide minimal, if any, disclosure of an attorney's thought processes. It will not reveal Plaintiffs' litigation strategy. Certainly, the work product doctrine was not devised to protect all work by attorneys in the global sense. Because the names and addresses that Defendants seek in the instant case are not protected by the work product doctrine and producing these names complies with the policy behind the Reform Act, Plaintiffs are ordered to provide the requested information to Interrogatory Nos. 2 and 5.

### C. *Interrogatory No. 3*

■ Similarly, the names of the medical doctors who told Plaintiffs or their representatives that Iodine–125 seeds were preferable to Theragenics' product TheraSeed® are not work product. It is clearly established that Defendants may discover the facts upon which Plaintiffs base their allegations and such facts include names of witnesses from whom counsel obtained their information. *In re Dayco Corporation Derivative Sec. Litig.*, 99 F.R.D. 616, 624 (S.D.Ohio 1983). Defendants merely seek the identity of "occurrence witnesses" which are discoverable at any time. *Id.*

■ Plaintiffs object to Interrogatory No. 3 on the grounds that it is "overbroad and seeks information which is irrelevant, immaterial and not reasonably calculated to lead to the discovery of admissible evidence." The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including ... the identity and location of persons having knowledge of any discoverable matter." Fed.R.Civ.P. 26(b)(1). Relevance has been construed broadly to include "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Furthermore, the discovery rules are to be accorded a "broad and liberal treatment ... [m]utual knowledge of all relevant facts gathered by both parties is essential to proper litigation." *Hickman*, 329 U.S. at 507, 67 S.Ct. 385.

Here the Court must look no further than the plain language of Rule 26(b), which recognizes that the identities of individuals "having knowledge of any discoverable matter" are relevant. By expressly pleading that paragraph 20 of the Second Amended Complaint is based on the opinions of "numerous

medical doctors," Plaintiffs have already conceded the relevancy of this subject. Moreover, this Interrogatory seeks only the names of doctors on whom Plaintiffs actually relied, and thus, Plaintiffs' claim that this request is overbroad is without merit.

Plaintiffs argue that because the Defendants already know the universe of doctors who prescribe Theragenic's Thera-Seed® product they can complete their own survey. However, this Court disagrees. First, whether Theragenics possesses the names of all its customers does not relieve Plaintiffs from identifying the witnesses upon whom they have based their allegations. Fed.R.Civ.P. 26(b)(1). Plaintiffs' suggestion that Defendants should survey all of their customers to determine which, if any, believe that I–285 seeds are the better product is not a substitute for discovering the witnesses upon whose information Plaintiffs based their allegations. Finally, Plaintiffs argue that because they do not intend to rely on the doctors they referred to in their pleading as witnesses at trial they are relieved of their obligation to provide this information in discovery. Plaintiffs cite to the Eighth Circuit case of *Fla. State Bd. Of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645 (8th Cir.2001) to support this proposition. In that case, the court stated in dicta that "... there is no need for the name of the money manager to be pleaded in the complaint, although it appears it will soon have to be disclosed under Fed.R.Civ.P. 26(a)(1)(A) if the shareholders intend to make use of it." *Green Tree Fin. Corp.*, 270 F.3d at 668. However, this Court is not obligated to follow the example in *Green Tree* because it is non-binding to this Court. Additionally, the statement is dicta and not central to the holding in *Green Tree*. Plaintiffs' decision not to rely upon testimony from the doctors does not relieve them of the obligation to respond to appropriate discovery. At a minimum, the Defendants are entitled to a verified response that Plaintiffs cannot identify by name any such doctors, if that is the case. This Court feels that by granting the Motion to Compel on Interrogatory No. 3, it reinforces the primary goal of the Reform Act by preventing baseless strike suits. Thus, because the names and addresses that Defendants seek here are not protected by the work product doctrine and producing these names complies with the policy behind the Reform Act, Plaintiffs are ordered to provide the requested information to Interrogatory No. 3.

### III. CONCLUSION

For the reasons set forth above, Defendants' Motion to Compel Plaintiffs to Answer Interrogatories [Doc. 49] is GRANTED.